**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHARON LOUISE MANNING,

        Plaintiff,

v.                                                                          Case No. 3:19-cv-655-J-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____

**OPINION AND ORDER**[1]

**I. Status**

      Sharon Louise Manning ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work during the relevant time period was the result of "[s]evere asthma, herniated disc in the back[, and a] stomach problem." Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed August 23, 2019, at 131, 144. Plaintiff filed an application for DIB on October 20, 2010,[2] alleging a disability onset date of January 1, 2010. Tr. at 512-18. The application was denied initially, Tr. at 130, 131-41, 217-20, and upon reconsideration, Tr. at 142, 143-53, 224-30.

---

      [1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed August 23, 2019; Reference Order (Doc. No. 14), entered August 26, 2019.

      [2]     Although actually completed on October 20, 2010, see Tr. at 512, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as October 13, 2010, see, e.g., Tr. at 131, 143, 568.

On April 13, 2012, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 101-28.   The ALJ issued an unfavorable decision on June 8, 2012, Tr. at 157-67, which was later vacated by the Appeals Council with instructions to reconsider Plaintiff's claim, Tr. at 172-75, 627-30 (duplicate).   In the meantime, Plaintiff moved to a different jurisdiction, and her case was assigned to another ALJ.   Tr. at 95, 68, 319, 321-23.   On July 21, 2015, the new ALJ held a hearing, during which she also heard from Plaintiff, who was represented by counsel, and a VE.   Tr. at 66-93.   The ALJ issued an unfavorable decision on September 11, 2015, Tr. at 180-206, that was once again remanded by the Appeals Council for further consideration, Tr. at 213-15.

On August 1, 2018, the ALJ held a final hearing, during which she again heard from Plaintiff, who was represented by counsel, and a VE.   Tr. at 50-64.   The ALJ issued a decision ("Decision") on August 15, 2018, finding Plaintiff not disabled through the date Plaintiff was last insured for DIB. Tr. at 10-37.   On April 10, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.   On June 3, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises three issues:1) whether the ALJ erred in "fail[ing] to explain why she was not accepting the [VE's] opinion that more than one absence per month would not be tolerated to maintain competitive employment"; 2) whether the ALJ erred in "failing to acknowledge or weigh the opinion of [William V.] Choisser[, M.D.] and further erred in substituting her own layperson opinion in place of the state agency

consultant and the treating physician" regarding Plaintiff's exposure to fumes, odors, gases, and poorly-ventilated areas; and 3) whether the ALJ erred in analyzing Plaintiff's noncompliance with prescribed treatment and in rejecting Plaintiff's subjective allegations regarding the effects of her impairments.   Plaintiff's Brief (Doc. No. 20; "Pl.'s Br."), filed November 25, 2019, at 1; see id. at 12-14 (argument regarding issue one), 14-19 (argument regarding issue two), 19-23 (argument regarding issue three).   On January 23, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's contentions.

The undersigned addresses the second issue, regarding Dr. Choisser's and the other medical opinions, and finds error necessitating reversal and remand.   The other issues are likely to be revisited on remand so they need not be addressed here.   See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in

---

[3]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 13-36.  At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2010, through her date last insured of December 31, 2013."  Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that through the date last insured, Plaintiff "had the following severe impairments: asthma; chronic obstructive pulmonary disease; degenerative disc disease of the thoracic spine and lumbar spine; peptic ulcer disease; diabetes mellitus; and gastroesophageal reflux disease."  Tr. at 13 (emphasis and citation omitted).   At step three, the ALJ found that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that through the date last insured, Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except with no climbing, kneeling, crouching, or crawling; only occasional stooping and balancing; no exposure to concentrated temperature extremes, humid or wet environments, concentrated fumes,

> gases, poorly-ventilated areas, concentrated vibrations, or hazards; and, she needed the ability to take breaks for about 5 minutes every two hours.

Tr. at 14 (emphasis omitted).   At step four, the ALJ found that through the date last insured, Plaintiff "was unable to perform any past relevant work" as a "Cashier II," a "Home Housekeeper," and a "Driver."   Tr. at 35.   (some emphasis and citation omitted).   The ALJ then proceeded to step five.   After considering Plaintiff's age ("42 years old . . . on the date last insured"), education ("a limited education and is able to communicate in English"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that through the date last insured, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 35 (emphasis and citation omitted), such as "Addresser," "Call Out Operator," and "Surveillance System Monitor," Tr. at 36.   The ALJ concluded that Plaintiff "was not under a disability . . . from January 1, 2010, the alleged onset date, through December 31, 2013, the date last insured."   Tr. at 36 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence— even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

**A.  Applicable Law**[4]

The Regulations establish a hierarchy among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion.  <u>See</u> 20 C.F.R. §§ 404.1527, 416.927.  Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has

---

[4]    On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); <u>see also</u> 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that are applicable to the date the claim was filed.

[5]    "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); <u>see also</u> 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[6]    A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink, 935 F.3d at 1259; Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078,

1084 (5th Cir. 1981) (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz</u>, 825 F.2d at 279); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; <u>see also</u> <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

**B.  Analysis**

Plaintiff argues—regarding the need to avoid exposure to irritants such as fumes, odors, dusts, gases, and poor ventilation—that "[t]he ALJ erred in substituting her opinion for the uncontroverted opinions of three medical experts- the state agency consultant, the treating physician, and the examining consultant."  Pl.'s Br. At 14.  Plaintiff focuses on the opinion of Dr. Choisser, the examining consultant, and points out that "[t]he ALJ failed to even acknowledge Dr. Choisser's opinion."  <u>Id.</u> at 16.

Dr. Choisser examined Plaintiff on November 20, 2017, prior to the last hearing. Tr. at 1961-68.  Following the examination, Dr. Choisser authored a report, Tr. at 1967-68, and filled out a physical RFC questionnaire, Tr. at 1961-66.  Prior to authoring the report, Dr. Choisser reviewed the relevant medical evidence.  Tr. at 1967.  Dr. Choisser opined as to a number of functional limitations, and he opined that the limitations were present as of 2010.  Tr. at 1961-66.  Later, on July 9, 2018, Dr. Choisser was asked to opine on whether Plaintiff should avoid all exposure to fumes, odors, dusts, gases, and poor ventilation, and he agreed that all exposure needed to be avoided.  Tr. at 2018.  In support of this opinion, Dr. Choisser cited Plaintiff's "severe COPD" and "short[ness] of breath on room air."  Tr. at 2018 (some capitalization omitted).

The ALJ was aware of this opinion because she referred to it during the August 1, 2018 hearing.  See Tr. at 54 (ALJ stating "we have this doctor now that says you're short of breath on room air").  Yet, in the Decision, she did not acknowledge or discuss Dr. Choisser's opinion at all.  Given the materiality of Dr. Choisser's opinion, as well as the consistency of the opinion (as to the need to avoid all exposure to the listed irritants) with that of state agency consultant Patricia Pisanelli, M.D., see Tr. at 150, and that of treating physician Kimberly Hageman, M.D.,[7] see, e.g., Tr. at 1040, 1125, the ALJ's failure to address Dr. Choisser's opinion constitutes error necessitating remand.  See Winschel, 631 F.3d at 1179 (citations omitted).

---

[7] The ALJ only assigned "some weight" to these opinions, finding the record did not support a limitation to no exposure whatsoever.  Tr. at 33 (Dr. Hageman's opinion), 34 ("April 2011 opinion of the State agency medical consultant" at "Exhibit 4A," which is Dr. Pisanelli's opinion).  While the ALJ did provide some reasons for this finding that are not squarely at issue in this appeal, see Tr. at 33, 34, in light of Dr. Choisser's third consistent opinion that the ALJ failed to acknowledge or discuss, remand for reconsideration is necessary.

Defendant argues the failure is harmless because Plaintiff has not "establish[ed] that any of the other jobs identified by the VE and found by the ALJ would be precluded if Plaintiff could have no exposure to any fumes, odors, gases, or a poorly-ventilated environment." Def.'s Mem. at 14. Defendant's argument, however, ignores a VE's opinion that was rendered on October 30, 2015 that, with a limitation of no fumes, gases, poorly-ventilated areas, dust, or smells, "[n]o additional jobs exist in significant numbers unless [Plaintiff] has the training and experience to work in a 'clean room' work environment that has a controlled level of environmental pollutants . . . which can be found in some pharmaceutical manufacturing or life science research settings." Tr. at 661-62 (emphasis added); see also Tr. at 61-62 (VE at August 1, 2018 hearing testifying six absences a month because of any exposure to irritants would result in no competitive employment), 63 (VE at August 1, 2018 hearing confirming an employer cannot provide an environment with "absolutely no exposure" to irritants). In light of this evidence, the failure to address Dr. Choisser's opinion was not harmless because there would be no jobs existing in significant numbers if the opinion were accepted.[8]

### V. Conclusion

Based on the foregoing, it is

---

[8]      Plaintiff requests reversal with a direction that benefits be awarded, or alternatively, reversal with remand. See Pl.'s Br. at 19. Although generally cases are remanded to the Commissioner for further proceedings, it may be appropriate to remand only for an award of disability benefits when the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (citing Bowen v. Heckler, 748 F.2d 629, 635-36 (11th Cir. 1984)). In other words, "where there is no need for the ALJ to take additional evidence, or to complete the sequential evaluation, and where substantial evidence exists in the record to support a finding of disability, the Court may properly reverse and remand for an award of benefits." Richardson v. Apfel, 44 F. Supp. 2d 1264, 1268 (M.D. Fla. 1998) (citing Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir. 1996)) (footnotes omitted). Here, resolving the error requires further consideration and explanation by the ALJ. It may also require additional evidence. Without such information, directing a disability finding based on the record would be inappropriate.

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

>       (A)     Evaluate Dr. Choisser's opinion, assign it weight, and provide reasons for the assignment;
>
>       (B)     If appropriate, address the other issues raised by Plaintiff in this appeal; and
>
>       (C)     Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 30, 2020.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of Record